FILED
SUPERIOR COURT
OF GUAM

2018 FEB -2 PM 3:09

CLERK OF COURT

By:

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DFS GUAM L.P., <br><br> Plaintiff, <br><br> v. <br><br> THE A.B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM, and DOE DEFENDANTS 1-10, INCLUSIVE, <br><br> Defendants. | CIVIL CASE NO. CV 0943-14 <br> (Consolidated with <br> CV 0094-15 and CV 0198-15) <br><br><br> **DECISION AND ORDER ON DFS'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ON PROTEST NO. 3** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on December 19, 2017, upon DFS Guam L.P.'s Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment on Protest No. 3. Plaintiff DFS Guam L.P. ("DFS") is represented by Attorneys Patrick Civille, Jay Srinivasan, and Maurice Suh. Attorneys Kathleen Fisher, Genevieve Rapadas and Jay Trickett represent Defendant A.B. Won Pat International Airport Authority, Guam ("AIAA").

DFS's Motion for Summary Judgment is the fourth of four motions for summary judgment heard in this matter. DFS seeks summary judgment on the basis of five arguments: (1) AIAA violated its enabling statute when the agency entered into the purported May 18, 2013 contract with Lotte without adopting a set of 12 GCA § 1203.1-mandated non-airline concession and lease criteria; (2) the 2012 Procurement did not comply with the Guam Procurement Code; (3) AIAA violated the Procurement Code by not maintaining a complete procurement record, and by failing to properly certify the procurement record; (4) AIAA

violated the Procurement Code's mandate of fair and equitable treatment to all persons dealing with the procurement system; and (5) AIAA violated the Procurement Code by not implementing the automatic stay listed in 5 GCA § 5425(g).

Having reviewed all of the pleadings and heard all oral arguments, for the reasons set forth below, the Court GRANTS DFS's Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment on Protest No. 3.

## BACKGROUND

This case arises from a procurement dispute between DFS and AIAA. The Guam Legislature enacted the A.B. Won Pat International Airport Authority, Guam's enabling statute on September 24, 1992, as Public Law 21-135. The enabling statute, codified under Title 12 Guam Code Annotated Chapter 1, required AIAA to establish a set of criteria dictating the operation of concessions at the airport property, and hold public hearings on those regulations within ninety days of the law becoming effective. AIAA created a preliminary draft of Non-Airline Lease and Concession Policies ("1995 Policies"), and held a public hearing regarding the 1995 Policies on October 19, 1995. Ada Decl. (MSJ 3) Ex. 1 (Apr. 13, 2017).

In 2001, AIAA issued an RFP to operate a specialty retail concession at the airport. DFS participated in the 2001 RFP as the sole bidder and submitted a question to AIAA regarding the 12 GCA § 1203.1 and its applicability. Ada Decl. (MSJ 3) ¶ 4, Ex. 2. AIAA replied to DFS that "Furthermore, based upon information and belief, the 1995 Policies were not fully and properly adopted and promulgated in accordance with the Administrative Adjudication Law pursuant to 12 GCA § 1203.1(a)(ii)." Id. AIAA awarded the concession contract to DFS and entered into an agreement on November 6, 2002.

AIAA held further RFPs for duty free concession contracts in 2006 and 2009. DFS bid for and won the concession contracts for both RFPs. The exemplar contract agreements and the contract agreements themselves had language stating: "The imposition of MAG Rent is consistent with the Authority's Non-Airline and Concession Lease Policies and the policies established by the [FAA], to which the Authority is subject." Ada Decl. (MSJ 3) Ex. 8, Ex. 9. The 2012 RFP exemplar contract held the identical language.

On July 19, 2012, AIAA issued the underlying Request for Proposals No. GIAA 010-FY12 ("2012 Procurement") being contested in this action. Both DFS and Lotte Duty Free Guam, LLC ("Lotte") submitted timely bids to AIAA. On April 12, 2013, AIAA announced Lotte as the most qualified proposer.

On April 23, 2013, DFS submitted a protest challenging the 2012 Procurement and AIAA's ranking of Lotte as the most qualified proposer (First Protest). DFS demanded that AIAA Management stay its negotiations with Lotte pursuant to 5 GCA § 5425(g). AIAA Management and Lotte temporarily stopped negotiating their concession agreement.

On May 17, 2013, AIAA denied DFS' First Protest based on the determination that the protest was filed past the statutory deadline and therefore, could not be considered. On May 18, 2013, AIAA and Lotte resumed contract negotiations, and the Specialty Retail Concession Agreement between AIAA and Lotte was signed that same day. On June 11, 2013, the AIAA Board of Directors ("Board") ratified the agreement entered into by AIAA and Lotte, as well as all other actions regarding the 2012 Procurement. On July 21, 2013, Lotte moved into the airport main concession space.

On May 29, 2013, DFS submitted a second protest challenging AIAA's award of the procurement contract to Lotte (Second Protest). DFS supplemented its Second Protest on June 3, 2013, and AIAA denied DFS's Second Protest on January 13, 2015.

On May 30, 2013, DFS simultaneously filed a civil action in Superior Court Civil Case No. CV 0685-13 and an appeal with the Office of Public Accountability ("OPA") challenging AIAA's award of the specialty retail contract to Lotte based on the reasons set forth in DFS's First Protest. The Superior Court action was dismissed for failure to exhaust administrative remedies on July 21, 2013. <u>DFS Guam L.P. v. A.B. Won Pat Int'l. Airport Auth.</u>, 2014 Guam 12.

DFS submitted its third procurement protest ("Third Protest") to AIAA on June 7, 2013, seeking to void Lotte's award on the basis that AIAA failed to adopt 1995 Policies as required by the enabling statute. On February 5, 2015, AIAA denied the Third Protest, holding that DFS had not exhausted its administrative remedies.

On March 10, 2015, DFS filed its third lawsuit against AIAA and Lotte for the wrongful award of the duty-free concession contract under Superior Court Civil Case No. CV0198-15. The Court consolidated Superior Court Civil Case Nos. CV0943-14, CV0094-15, and CV0198-15, on July 19, 2016.

DFS filed its Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment on Protest No. 3, with the Court on October 27, 2017. AIAA filed its Opposition on November 22, 2017 and DFS filed its Reply on December 11, 2017.

The Court heard DFS's Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment on Protest No. 3, during a hearing on December 19, 2017. At the conclusion of oral argument, the Court took this matter under advisement.

## DISCUSSION

DFS seeks summary judgment on the basis of five arguments: (1) AIAA violated its enabling statute when the agency entered into the purported May 18, 2013 contract with Lotte without adopting a set of 12 GCA § 1203.1-mandated non-airline concession and lease criteria; (2) the 2012 Procurement did not comply with the Guam Procurement Code; (3) AIAA violated the Procurement Code by not maintaining a complete procurement record, and by failing to properly certify the procurement record; (4) AIAA violated the Procurement Code's mandate of fair and equitable treatment to all persons dealing with the procurement system; and (5) AIAA violated the Procurement Code by not implementing the automatic stay listed in 5 GCA § 5425(g). However, before the Court can address the merits of DFS's arguments, the Court must first address the issue of standing brought by AIAA. If the Court finds standing, the Court takes DFS's arguments in the following order: Argument 5, Argument 1, Argument 2, Argument 3, and Argument 4. Although a finding for DFS's first, second, third or fifth arguments would give sufficient cause for the Court to grant summary judgment on large portions of the Complaint, or the entire Complaint itself, the Court, in the interest of addressing all of the merits, chooses to examine each of DFS's arguments.

## A. Standard for Adjudicating a Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Guam R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Rule 56(c) of the GRCP further mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U .5. at 322. A genuine issue of material fact exists if there is sufficient evidence which establishes a factual dispute requiring resolution by a fact-finder. Guam Pac Enter., Inc. v. Guam Poresia Corp. et al., 2007 Guam 22 n.8 (citing Iizuka Corp. v. Kawasho Int'l (Guam). Inc., 1997 Guam 10 ¶ 7). The factual dispute must also concern a fact "that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." Id.

If the movant demonstrates a lack of a genuine issue of material fact, "the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some significant probative evidence tending to support the complaint." Edwards v. Pacific Fin. Corp. et al., 2000 Guam 27 n. 7 (citations omitted). Thus, the ultimate inquiry for the Court is "whether the 'specific fact' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Bank of Guam v. Flores, 2004 Guam 25 n.7. In determining a motion for summary judgment, "the court must draw inferences and view the evidence in a light most favorable to the non-moving party." Id.

## B. DFS Holds Standing to Bring this Matter

Prior to discussing the merits of DFS's motion, the Court addresses the question of standing brought by AIAA. "Standing is a threshold jurisdictional matter." Guam Image Consultants Inc., v. Guam Mem'l Hosp. Auth., 2004 Guam 15 ¶ 17 (citing Brewer v. Lewis, 989 F.2d 1021, 1025 (9th Cir. 1993)). Standing is a requirement of subject-matter jurisdiction that must be determined as of the date of filing of the complaint. Taitano v. Lujan, 2005 Guam

26 ¶ 15. The Court has no subject-matter jurisdiction over a case when a party lacks standing, and must dismiss the case. DFS Guam L.P., 2014 Guam 12 ¶ 14. The relevant question the Court must ask regarding standing is "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues." Benavente v. Taitano, 2006 Guam 15 ¶ 14 (citing Warth v. Seldin, 422 U.S. 490, 498 (1975)).

AIAA argues that DFS lacks standing because (1) DFS untimely filed its Third Protest, and (2) DFS brought its suit based on statutes without private rights of action. AIAA Opp'n 12-14 (Nov. 22, 2017). The Court previously addressed both arguments in its Decision and Order on AIAA's Motion for Summary Judgment No. 3 (Third Protest) ("AIAA MSJ 3 Decision and Order"). In the AIAA MSJ 3 Decision and Order, the Court found that DFS timely filed its First Protest. AIAA MSJ 3 D&O 7 (Feb. 2, 2018). Pursuant to 5 GCA § 5425(a), the Court found that DFS became "aggrieved" on April 16, 2013, the Tuesday after AIAA selected Lotte as the most responsive bidder, and the day AIAA sent out notifications to all the participants of the 2012 Procurement results. Id. The Procurement Code allows "aggrieved persons" to file their protests with the agency within fourteen days. 5 GCA § 5425(a). DFS had until April 30, 2013, to file any protests of AIAA's award to Lotte. The Court found that DFS's timely filing of the First Protest on April 23, 2013, triggered the automatic stay provision[1] of the Procurement Code. AIAA MSJ 3 D&O 7-8. The First Protest's automatic stay still remains in effect until the First Protest reaches a final resolution. Id.; see also Teleguam Holdings, LLC v. Territory of Guam, 2015 Guam 13 ¶ 31. The automatic stay triggered by the First Protest tolled the statutorily allotted period to file the Third Protest making DFS's filing of its Third Protest on June 7, 2013, timely. AIAA MSJ 3 D&O 7-8.

The Court addressed DFS's statutory and common law standing to bring this matter in the AIAA MSJ 3 Decision and Order. See id. at 10-17. The Court found that DFS held statutory standing to bring this case pursuant to the Procurement Code. Id. at 14. As an aggrieved bidder,

---

[1] "In the event of a timely protest under Subsection (a) of this Section or under Subsection (a) of § 5480 of this Chapter, the Territory shall not proceed further with the solicitation or with the award of the contract prior to final resolution of such protest, and any such further action is void…"5 GCA § 5425(g).

DFS held standing to file its Third Protests with AIAA. Id. After AIAA denied DFS's Third Protest, 5 GCA § 5425(e),(f) allowed DFS to file appeals with the Office of the Public Auditor ("OPA") and the Superior Court. Because the OPA recused herself from this matter, the Court excused DFS from having to file an appeal with OPA. Id. at 13-14. The Court found that, because DFS timely appealed to the OPA and the Superior Court, DFS preserved its rights to an appeal and met the requirements to possess statutory standing in the Superior Court. Id. at 14.

The Court also examined DFS's common law standing. The Court used the three-part test from Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). The Lujan test requires a plaintiff to have suffered an (1) injury in fact, which is (a) concrete and particularized, and (b) actual or imminent, (2) which was caused by the conduct of the defendant, and (3) can be redressed by the Court. See id. at 560-61. The Court found that DFS met all three requirements of the Lujan test, and found that DFS also possessed common law standing to bring this matter. AIAA MSJ 3 D&O 17.

The Court finds that DFS timely filed its Third Protest, and that DFS possess both statutory and common law standing to bring this matter. Having found standing, the Court turns to the merits of DFS's arguments.

### C. AIAA's Failure to Implement a 5 GCA § 5425(g) Automatic Stay Violated the Guam Procurement Code

Guam's Procurement Law states that "[i]n the event of a timely protest under Subsection (a) of this Section or under Subsection (a) of § 5480 of this Chapter, the Territory shall not proceed further with the solicitation or with the award of the contract prior to final resolution of such protest, and any such further action is void . . . ." 5 GCA § 5425(g). In Guam Imaging, the Supreme Court made clear the timeliness requirement of the automatic stay provision, stating that "the Guam Procurement Law . . . contain[s] automatic stay provisions that are triggered by timely protests," and that "a protest . . . be both factually timely and pursued before the award has been made in order to trigger the automatic stay [provision]." Guam Imaging, 2004 Guam 15 ¶ 23. In other words, AIAA would have violated the automatic stay provision mandated by 5 GCA § 5425(g) if DFS's protest was both factually timely and filed before the award to Lotte

was made. See id. Further, the Supreme Court also clarified the finality requirement under 5 GCA § 5425(g) holding that the automatic stay provision remains in effect during "commencement of a civil suit within the Superior Court and continues until *final resolution* of the action by the Superior Court." Teleguam, 2015 Guam 13 ¶ 31 (emphasis added).

The parties agree on several undisputed events. The parties agree that AIAA revealed Lotte as the most qualified bidder during a Board of Directors ("Board") meeting held on April 12, 2013. Secondly, the parties agree that DFS filed its First Protest on April 23, 2013. AIAA investigated DFS's First Protest and issued a written denial of the First Protest on May 17, 2017. AIAA and Lotte concluded their negotiations for a concession contract the following day on May 18, 2013, and publically announced the conclusion of the negotiations in a memorandum issued on May 20, 2013. On May 29, 2013, DFS filed its Second Protest with AIAA. On May 30, 2013, DFS filed a civil action with the Superior Court of Guam and a procurement appeal with the OPA. The parties also agree that DFS filed its Third Protest on June 7, 2013. Lastly, the parties agree that the Board ratified all of AIAA's procurement-related activities during a special Board meeting held on June 11, 2013.

DFS timely filed its First Protest on April 23, 2013. Although the parties disagree on when AIAA awarded the contract to Lotte, the parties agree that no award was made prior to April 23, 2013. DFS's timely filing of its First Protest prior to the award to Lotte triggered an automatic stay pursuant to 5 GCA § 5425(g). The automatic stay required the Territory to "not proceed further with the award or with the award of the contract prior to final resolution of such protest, and any such further action is void..." 5 GCA § 5425(g). On Friday, May 17, 2013, AIAA denied DFS's First Protest. DFS simultaneously filed a civil action with the Superior Court and an appeal with the OPA on May 30, 2013. By filing an appeal with the OPA within the statutorily allotted fifteen days, DFS preserved its rights to an appeal to the OPA. The automatic stay triggered by DFS's First Protest remains in effect today because the First Protest has not reached a final resolution.

Under Teleguam, AIAA should have refrained from taking action until after the fifteen-day appeal period elapsed, after having made sure DFS did not file an appeal to the OPA.

Teleguam, 2015 Guam 3 ¶ 31. AIAA concluded for itself that the agency's denial gave finality to the First Protest. However, the conclusions reached by the agency are not final or conclusive on the Court. 5 GCA § 5703. Notwithstanding its duty to remain stayed, AIAA resumed its negotiations with Lotte on Saturday, May 18, 2013, and on the same day, reached an agreement. AIAA's actions appear to have frustrated the due process rights of DFS to appeal the protest decision.

AIAA argues that the agency awarded the duty free concession contract to Lotte when the two parties reached agreement on May 18, 2013. DFS argues that AIAA awarded Lotte the contract at the June 11, 2013 Board meeting. Regardless of when the purported award to Lotte occurred, AIAA did so during the pendency of the First Protest's automatic stay, in violation of 5 GCA § 5425(g). Therefore, the Court finds that DFS filed its Third Protest during the pre-award phase of the 2012 Procurement.

The automatic stay also affected the fourteen-day filing deadline for the Third Protest. An automatic stay pursuant to a statute tolls statutes of limitations. See Pac. Rock Corp. v. Dep't of Educ., 2001 Guam 21 ¶ 53 (the statute of limitations is tolled by the prerequisite of exhausting administrative remedies under the Procurement statutes); Bishop v. Apfel, 91 F.Supp.2d 893, 894 (W.D. Va., 2000) (the time limit for seeking judicial review of an administrative decision is subject to equitable tolling); see also Urban Renewal Auth. v. Dongbu Ins. Co., 2001 Gaum 24 at ¶¶ 10-14 (adopting the equitable tolling doctrine). DFS's time to file its Third Protest was tolled by the activation of the First Protest's automatic stay.

The Court finds two violations of the 5 GCA § 5425(g) automatic stay provision. AIAA first violated the automatic stay triggered by DFS's First Protest with all its post-April 23, 2013 activities. DFS timely filing its Third Protest prior to the Lotte award triggered a second, concurrently running automatic stay. AIAA violated this second automatic stay with each post-June 7, 2013 activity, not limited to AIAA ratifying the 2012 Procurement at the special June 11, 2013 Board meeting, and installing Lotte into the concession space on July 21, 2013. The Court further finds that AIAA exceeded its statutorily allotted authority. Therefore, the Court

GRANTS DFS's Argument 5 and the First and Second Causes of Action in its Complaint. The Court will address remedies in a separate section at the end of this decision and order.

Beyond finding that AIAA violated the automatic stay provision of 5 GCA § 5425(g), the Court also expresses concern over AIAA's actions after denying DFS's First Protest. The Court asks the following question: Did AIAA give DFS a meaningful opportunity to appeal the denial of the First Protest to the OPA, as was their right? The Court recognizes that AIAA did not have the benefit of guidance from the Supreme Court's Teleguam decision.

## D. AIAA's Failure to Adopt and Promulgate a Set of 12 GCA § 1203.1 Non-Airline Concession and Lease Criteria Violated its Enabling Statute

DFS's Argument 1 presents a challenge for the Court. The Court notes that Argument 1 is an issue of first impression for the Court. The Court has no direct guidance or precedent from the Guam Supreme Court to apply. Therefore, the Court examines DFS's Argument 1 using the Guam Supreme Court's well-established principles of statutory interpretation. When determining the meaning and applicability of statutes, the Court's primary duty is "to interpret statutes in the light of their terms and legislative intent." Carlson v. Guam, 2002 Guam 15, ¶ 46 n.7. See also Big Creek Lumber Co. v. Cnty. Of Santa Cruz, 136 P.3d 821, 829 (Cal. 2006). The Court starts this inquiry with the plain language of the statutes. Teleguam, 2015 Guam 13 ¶ 18 ("Statutory interpretation always begins with the plain language of the statute."); see also Aguon v. Guteirrez, 2002 Guam 14 ¶6. The Court holds to the plain meaning of the statutes in the absence of "clear legislative intent to the contrary". Teleguam. 2015 Guam 13 ¶ 18. To determine legislative intent, the Court must read a statute "as a whole" and "construe each section in conjunction with other sections." Sumitomo Constr. Co. v. Gov't of Guam, 2001 Guam 23 ¶ 17. However, "[n]otwithstanding the deference due the plain-meaning of statutory language ... such language need not be followed where the result would lead to absurd or impractical consequences, untenable distinctions, or unreasonable results." Id.

### 1. Public Law 21-135 Required AIAA to Pass Non-Airline Concession and Lease Criteria

DFS challenges portions of AIAA's enabling statute arguing that AIAA failed to enact a non-airline lease and concession policy mandated by the Guam Legislature. The specific section of the enabling statute, Title 12 Chapter 1 Section 1203.1, states in relevant part:

> (a) Any agreement between the ABWPGIAA and any other party concerning the operation of a concession, other business or a service provider at ABWPGIAA shall conform to the following:
>
> (2) criteria established for the operation of a concession, other business or service provider at the ABWPGIAA, which criteria shall be reviewed at a public hearing held within ninety (90) days of the effective date of this Section, and held in accordance with the Administrative Adjudication Law;

12 GCA § 1203.1(a)(2). A plain language reading of Subsection (a)(2) shows a requirement that all agreements between AIAA and non-airline businesses or service providers must conform to certain criteria established to be by AIAA. The statute further indicates the existence of a mandate from the Legislature ordering AIAA to prepare a proposed set of criteria, hold public hearings on said proposed criteria, and formally establish the criteria according to the Administrative Adjudication Law.

A holistic reading of § 1203.1 suggests that the Guam Legislature requirement of preparing and establishing a set of criteria for non-airline business and service activities was but one of four mandates set by the Legislature governing AIAA's contracts with non-airline business and service providers. The legislative mandates include (1) limiting exclusive concession contracts to period of five years; (2) establishing a non-airline concession and lease policy; (3) limitations on the number of times a contract can be extended; (4) and a mandate requiring AIAA to encourage local participation in operating a concession business by using a competitive bid process.

A look at Public Law 21-135 and the legislative process leading to the passage of Public Law 21-135 supports the Court's reading of § 1203.1 and § 1203.1(a)(2). With respect to § 1203.1 as a whole, the Court finds interesting how the Legislature chose to add an entirely new section to AIAA's enabling statute in a bill designed to grant AIAA more autonomy by giving AIAA authority to sell pre-approved bonds and enter into concession agreements independent of legislative approval. Concerns surrounding AIAA's newfound authority surfaced during the committee work for Public Law 21-135.

During the Committee on Ways and Means' ("W&M Committee") public hearing on Bills 797 and 798, Senator Don Parkinson expressed concern on the practical independence of AIAA. Although classified as an autonomous agency, Senator Parkinson noted that AIAA's Board could change every election cycle opening up possibilities for elected officials to interfere with AIAA's operations and grant "sweetheart deals." Guam Leg. Comm. on Ways and Means, P.L. 21-135, Comm. Rep. at 21-22 (1992) (citation omitted). AIAA consultant, Mr. Michael Moroney, informed the W&M Committee of the existence of lease and concession policies used by airports governing how airports handle their contracts, leases and their terms and conditions. Id. at 21. Airport bond council, Mr. Stan Dirks, supported the enactment of such a lease and concession policy "which would make it impossible for the next layer of government to interfere with the operations of [AIAA]." Id. at 22. Senator Parkinson pushed for the inclusion of a lease and concession policy and Senator Carl T.C. Gutierrez, Chairman of the W&M Committee, assured committee members that the issue of a lease and concession policy would be included in Bill 798. Id. at 22-23.

After the conclusion of the public hearings, the W&M Committee agreed to require AIAA to establish non-airline concession-related rules and regulations. Id. at 27. ("It provides that [AIAA] **must** establish criteria by rules and regulations according to the Administrative Adjudication Law to provide for the operation of a concession, other business, or service provider at the airport terminal." (emphasis added)). The W&M Committee also agreed during its work sessions that "[AIAA] should form a set of rules and regulations to govern the agreements made between [AIAA] and concessionaires, other businesses and service providers, to give the public and the business community expected criteria and standards for doing business at the new facility." Id. The W&M Committee's use of the phrase, "agreements made between [AIAA] and concessionaires, other businesses and service providers", supports the Court's rejection of AIAA's narrow definition of the word "operation". If the Legislature intended AIAA's non-airline lease and concession policy to govern agreements between AIAA and concessionaires, naturally the steps taken to reach the agreements between the parties would fall within the purview of such a policy. The Legislature unanimously passed Bill 797 and

Governor Joseph F. Ada signed Public Law 21-135 into law on September 24, 1993. Transmittal Letter from Governor Joseph F. Ada to Twenty-First Guam Legislature regarding Public Law 21-135 (Sept. 24, 1992).

The Legislature's committee work on and the subsequent passage of Public Law 21-135 shows the Court exactly what the Legislature intended when the body enacted 12 GCA § 1203.1. The Legislature intended AIAA to establish a set of non-airline concession and lease criteria, to serve as a check against potential political interference from future elected officials. The Court finds the Legislature's mandate to AIAA requires the agency to finalize, adopt, and promulgate a set of non-airline concession and lease criteria according to the Administrative Adjudication Law.

## 2. AIAA Violated the AIAA's Enabling Statute

AIAA concedes that it had not carried out the mandate to finalize, adopt, and promulgate a set of non-airline concession and lease criteria according to the Administrative Adjudication Law. Although AIAA produced the 1995 Policies in August 1995, AIAA states unequivocally "the 1995 Policies were not formally *adopted* or *promulgated* in accordance with the [Administrative Adjudication Law]." AIAA Opp'n 3 (Nov. 22, 2017) (citing Ada Decl. (MSJ 3) ¶ 3). However, AIAA argues that the lack of criteria would not render the concession contract with Lotte void. Id. at 15. AIAA cites to Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345 (1997), and contends that "where [a] contract is made by the agency head, is viewed by the agency as valid, and the error is harmless, a contract will not be deemed void just because statutory requirements in its enabling act are not met." AIAA Opp'n 15.

The Court examines Cubic and AIAA's arguments. In Cubic, the United States Army issued procurement for a computer driven battle simulation program. Cubic Applications, Inc., the unsuccessful bidder, protested the Army's decision to award the simulation program contract to Logicon, RDA. Cubic, 37 Fed. Cl. at 348-49. The federal court found for the successful bidder and granted summary judgment. The Cubic court declined to void the contract to Logicon on primarily on three grounds: (1) the Army's contracting officer's error was harmless to all parties; (2) all parties operated under the assumption that the disputed federal

statute was not applicable, and (3) Cubic failed to inquire whether the Army followed the applicable federal statute. Id. at 357.

AIAA argues that the Court should not void the contract to Lotte based on the three grounds in Cubic. AIAA Opp'n 16. Firstly, AIAA argues that AIAA Executive Manager, Charles Ada, held contact making authority and that AIAA's error of not promulgating a set of non-airline concession and lease criteria was harmless. Secondly, AIAA views the contract with Lotte as valid. The § 1203.1 criteria's purpose was to protect the interest of the airport and the public. The public's interest would not be served by the Court voiding Lotte's contract, especially because no party was harmed by AIAA's failure to adopt § 1203.1 criteria. Further, the income generated by the Lotte contract fulfilled the purpose of the 2012 Procurement, maximizing rental income. Id. Lastly, AIAA argues that DFS's conduct warrants enforcement of the Lotte contract because DFS never inquired about the status of a set of non-airline concession and lease criteria. Id.

The Court rejects AIAA's arguments. The Court distinguishes the instant case from Cubic for one fundamental reason: the Cubic court used a rule within the Federal Circuit to validate an awarded contract. The instant procurement still resides in the pre-award stage. The Court analyzed at length in Section C of this decision and order of how, regardless of all the actions taken by AIAA, this procurement never progressed into the post-award stage after DFS filed its First Protest. For this fundamental reason, the Court declines to extend the Cubic court's rulings to the instant matter. However, in the interest of thoroughness, the Court examines the three grounds presented by AIAA.

The Court rejects all three grounds brought by AIAA. Firstly, AIAA's error would not be harmless to the unsuccessful bidders. AIAA's failure to adopt a set of non-airline concession and lease criteria caused all the bidders to submit proposals without proper guidance. If the Court were to void this procurement, all bidders would have unnecessarily expended time and money pursuing an improper procurement. Further, the outcome of a second, lawful procurement could produce a different most responsive bidder. AIAA cannot argue that the outcome would have been the same. Secondly, the Court rejects AIAA's characterization of

what constitutes the public interest. While maximizing revenue would be in the public interest, the Court finds that a greater interest lies in the obedience to the Legislature's mandate. Reducing the risk of political interference to allow AIAA to maximize its revenue generating potential is the public interest of § 1203.1. Further, the Court finds another greater public interest in the rule of law being respected and followed. Lastly, the Court does not find that DFS should have been required to inquire of the status of AIAA's non-airline concession and lease policies. DFS, an outside business, should not be held to know whether AIAA followed the Legislature's mandate, especially after questions could be asked whether AIAA acted as if a set of non-airline concession and lease criteria had been enacted.

AIAA also argues against the timeliness of DFS's protest stating that because DFS had known that AIAA did not adopt a set of non-airline concession and lease criteria, DFS's time to protest would have started when DFS received the RFP packet. Id. at 13. AIAA argues that "when an alleged defect is apparent on the face of an RFP, the proposer's duty is to protest is immediately triggered". Id. (citing Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1314 (Fed. Cir. 2007). In Blue & Gold Fleet, the court of appeals for the Federal Circuit found at least two types of challenges a bidder can assert: (1) a challenge to the evaluation of a proposal, and (2) a challenge to the terms of the solicitation. Blue & Gold Fleet, 492 F.3d at 1313. A bidder challenging the terms of a solicitation must bring its challenge prior to the close of the bidding process. Otherwise, the bidder waives its rights to challenge. Id. at 1315. The Court distinguishes the instant matter from the federal court's ruling in Blue & Gold Fleet. The federal court's ruling only affects the narrow realm of challenges to the terms of a solicitation. AIAA argues that DFS waived its right to protest AIAA's failure to enact a set of § 1203.1 criteria. The Court disagrees. DFS's Third Protest is not a challenge to the terms of the solicitation. The federal court's ruling would not apply in this instance. Therefore, the Court rejects AIAA's objection that DFS waived its right to protest.

The Court rejects every objection argued by AIAA. Therefore, the Court accepts AIAA's admission and finds that AIAA violated its enabling statute when AIAA failed to finalize, adopt, and promulgate a set of non-airline concession and lease criteria pursuant to 12

GCA § 1203.1(a)(2). The Court further finds that AIAA acted in violation of 12 GCA § 1203.1 when the agency proceeded with the 2012 Procurement. With there being no disputes of material fact, the Court GRANTS summary judgment on DFS's Argument 1 and its Third to Seventh Causes of Action pled in its Complaint for reasons independent of any other decision the Court may render in this decision and order. The Court will address remedies in a separate section at the end of this decision and order.

## E. The 2012 Procurement Used an Unauthorized Procurement Process and Did Not Comply with the Guam Procurement Code

DFS's Argument 2 is another issue of first impression for the Court. As above, the Court relies on the Guam Supreme Court's well-established principles of statutory interpretation for the following analysis. DFS's second argument protests AIAA's use of a request for proposal ("RFP") process for the 2012 Procurement.

Guam's Procurement Code allows for several methods of procurement selection. Fleet Systems, Inc. v. Dep't of Admin., Gov't of Guam, 2006 Guam 6 ¶ 14. Of those methods, the Court finds two methods relevant to the instant analysis. Title 5 GCA Section 5210(a) states in relevant part:

> Unless otherwise authorized by law, all territorial contracts shall be awarded by competitive sealed bidding, pursuant to § 5211 of this Article, except for the procurement of professional services and except as provided in…

5 GCA § 5210(a). For the procurement of professional services, 5 GCA § 5216(a) states:

> Conditions for Use. The services specified in § 5121(a) of this Chapter shall be procured in accordance with this Section, except as authorized under §§ 5214 or 5215 of this Chapter. Services for architecture, engineering, construction, land surveying, environmental assessment and other such services shall be procured in accordance with Article 5 of this Chapter.

5 GCA § 5216(a). The title of 5 GCA § 5216 reads "Competitive Selection Procedures for Services Specified in § 5211 of this Chapter". The Supreme Court found that Government of Guam agencies must use a competitive sealed bidding ("CSB") process for all procurements except for the procurement falling within certain statutory exceptions. Fleet Systems, 2006 Guam 6 ¶ 15. One relevant statutory exception pursuant to 5 GCA § 5121 allows government

agencies to procure professional service using the competitive sealed proposal ("CSP") process. Id. at ¶ 20.

The Court must also read the two methods of source selection in conjunction with AIAA's enabling statute. Title 12 Chapter 1 Section 1105(b) grants AIAA to:

> Acquire by grant, purchase, gift, devise, lease, permit, right of entry or by the exercise of the right of eminent domain in accordance with the provisions and subject to the limitations of laws of Guam including 5 GCA Chapter 5 [Procurement Law], and hold and use any real and personal property necessary, convenient or useful for the carrying out of any of its powers pursuant to the provisions of this Chapter, and to dispose of the same.

12 GCA § 1105(b). Section 1105(b), a general grant of authority over the power of procurement, directs AIAA to follow the Guam Procurement Code for any procurements. This directive is easy for the Court to read in accordance with §§ 5211 and 5216. If AIAA seeks to procure anything other than a service specified in §§ 5211 and 5216, AIAA must use the competitive sealed bidding or Invitation for Bids ("IFB") method of procurement. If AIAA seeks to procure professional services, AIAA must use the competitive sealed proposal or RFP method.

However, the Court's inquiry does not end here. AIAA's enabling statute includes two other references to procurement. Section 1203.1(a)(1) limits exclusive rights to sell certain goods to five years, but "only after a competitive proposal procedure, according to the General Services Administration rules and regulations." 12 GCA § 1203.1(a)(1). Below Subsection (a)(1), Subsection (a)(4) mandates a different method of procurement procedure for concessions. Section 1203.1(a)(4) states:

> in order to maximize local participation in concession businesses at the ABWPGIAA, the ABWPGIAA shall abide by the competitive bid process, to the extent consistent with good business practice, and make available the maximum number of opportunities for local businesses to provide concession goods and services at the ABWPGIAA.

12 GCA § 1203.1(a)(4). AIAA's enabling statute gives two differing instructions on how to conduct procurements. Subsection (a)(1) requires AIAA to hold an CSP process for concession procurements, while Subsection(a)(4) requires an CSB process. Both statutes appear to contradict one another and the Court cannot apply both statutes without reaching absurd

consequences. Therefore, the Court must balance these statues in the manner which best speaks to their true intent. *Sumitomo*, 2001 Guam 23 at ¶ 16-17.

The earliest version of 12 GCA § 1203.1 was signed into law on September 24, 1992, as Public Law 21-135. Transmittal Letter from Governor Joseph F. Ada to Twenty-First Guam Legislature regarding Public Law 21-135 (Sept. 24, 1992). On August 13, 1998, Governor Carl T.C. Gutierrez signed into law Public Law 24-255, which amended § 1203.1. Transmittal Letter from Governor Carl T.C. Gutierrez to Twenty-Fourth Guam Legislature regarding Public Law 24-255 (Aug, 14, 1998). On October 15, 2001, the Legislature overruled a gubernatorial veto and passed Public Law 26-51, which repealed and reenacted §1203.1. Certification of Passage of Public Law 26-51 (Oct. 16, 2001). Although explored above, the Court now moves to further examine the legislative intent behind Public Law 21-135, as well as Public Laws 24-255 and 26-51.

### 1. Public Law 21-135

The Legislature passed Public Law 21-135 on September 14, 1992 as a means of granting AIAA more independence in selling pre-approved bonds. However, AIAA's increased autonomy came with a price. The Legislature attached three mandates in the newly added § 1203.1. The first mandate interests the Court in this section as AIAA cites to § 1203.1(a)(1) arguing that the agency properly conducted the 2012 Procurement. The statute states:

> (1) allow for an exclusive right to sell certain goods or provide certain services only after a competitive proposal procedure according to the General Services Administration rules and regulations and for a duration of no longer than five (5) years. Any exclusive right for a duration of longer than five (5) years shall be given by GAA to any party only upon subsequent approval by the Legislature by statute.

12 GCA § 1203.1(a)(1). The current statute retains the original language of Public Law 21-135. A plain language reading of the statute indicates that the Legislature created an exception to the CSB statute of 5 GCA § 5211, allowing AIAA to procure an exclusive contract to sell certain goods or services by way of a competitive proposal procedure, as long as AIAA complied with the General Services Administration's rules and regulations governing a competitive proposal procedure.

The Legislature's statutory exception was in contrast to the Government of Guam's preference for sealed bidding. Prior to 1985, government contracts could be awarded using the CSP process previously codified in 5 GCA § 5212. Fleet Systems, 2006 Guam 14 ¶ 15. However, the Legislature repealed § 5212 when it passed Section 8 of Public Law 18-8, on July 8, 1985. Id. However, the carveout created by 12 GCA § 1203.1(a)(1) allowed AIAA to utilize the competitive proposal procedure as a method authorized by law. Therefore the Court finds that, barring a legislative act removing the exception, Public Law 21-135 authorized AIAA to use the competitive proposal procedure when procuring its duty free concession operators.

### 2. Public Law 24-255

The Legislature passed amendments to § 1203.1(a) in Public Law 24-255, in part to ensure that AIAA granted concessions on a competitive basis. To do so, the Legislature added two subsections to § 1203.1(a). The added subsections read:

> (iv) GIAA cannot enter into any master or general concession agreement or any agreement where the concessionaire is the owner or operator providing the product or service without going through the competitive bid process; and
> (v) in order to maximize local participation in the concession business at the Airport, GIAA shall abide by the competitive bid process, to the extent consistent with good business practice, and make available the maximum number of opportunities for local businesses to provide the concession goods and services at the Airport.

12 GCA §§ 1203.1(iv),(v) (citing the version of 12 GCA § 1203.1(a) prior to its repeal and reenactment in 2001.). On May 12, 1998, the Committee on Transportation, Telecommunications & Micronesian Affairs ("TT&M Committee") held a public hearing on Bill 543. AIAA expressed concern that the newly added Subsection (a)(iv) would impair AIAA's ability to manage its concessions program by legislating management and business practices contrary to AIAA's status as public corporation. See Guam Leg. Comm. on Transportation, Telecommunications & Micronesian Affairs, P.L. 24-255, Comm. Rep. 1 (1998). Chairwoman, Senator Carlotta Leon Guerrero, responded to AIAA's concerns by expressing concerns of her own. Senator Leon Guerrero noted that the reason the Legislature created Bill 543 was because AIAA's Board extended the catering concession agreement with Lufthansa Service Guam ("LSG"), originally due to expire in January 2002, to 2007. Id. at 2. Other

senators joined in expressing their concern that AIAA chose to extend its contract with LSG four years prior to it expiring. Id. at 2-3 ("Senator Aguon expressed concern about the master concessionaire agreement. Who requested for the extension, LSG or the airport?"). Afterwards, Senator Leon Guerrero expressed her fears of not allowing businesses to bid for business opportunities and voiced her desire to see local businesses being given opportunities to have opportunities to compete for AIAA's concession contracts.[2] Id. at 4.

After the public hearing, the TT&M Committee met to discuss the testimonies of Bill 543's stakeholders. Id. at 9. The discussions led to the TT&M Committee creating a mandate that AIAA exercise sound business decisions. The mandate required AIAA to thoroughly consider all alternatives when conducting bid processes.[3] Id. The TT&M Committee submitted its recommendation to pass Bill 543 to the full body of the Legislature, and the Legislature passed Bill 543 as Public Law 24-255 on July 29, 1998.

The Court's observes that the two added subsections both required AIAA to use the "competitive bid process" to secure agreements with concessionaires. Although the Legislature limited the scope of Subsection (a)(iv) to contracts with concessionaires who own or operate the product or service, the broader Subsection (a)(v) requires AIAA to use the "competitive bid process" for concession businesses in general at the airport. The Court also notes Governor Gutierrez's interpretation of Public Law 24-255 in his transmittal letter to Speaker Antonio Unpinco which states, "This legislation requires a competitive bid process for any contracts for a master or general concession agreement at the Airport. This is in line with the general procurement procedures of the government to allow for open competition on offering services to

---

[2] "Senator Leon Guerrero voiced her fears about this type of thought process. By-passing the bidding process, denying other businesses the opportunity to bid for space at the airport for the convenience of the board is not a comfortable thought. For whatever reason, Senator Leon Guerrero wants to see local businesses have the opportunity to get their foot in the door. She wants to see process, she wants to see bidding, and she doesn't want to see decisions being made any earlier than possible. The Senator doesn't want to see the board favoring a few people. This is her position and believes that it is important for her make this statement very clear to the board. The board may feel that this is only about LSG, but the Senator sees Duty Free coming up right behind this issue."

[3] "The committee agrees that sections 1203,l(a)(iv) and (v) should be restated to clarify that the legislature does not intend to take away GIAA's ability to make sound, business decisions. However, this committee does want to make a statement that the GIAA board thoroughly consider all alternatives, especially in the bidding process, prior to making these sound, business decisions. As such, the committee has made changes to Bill 543 and will introduce this bill, as substituted by the committee."

the government." Transmittal Letter from Governor Carl T.C. Gutierrez to Twenty-Fourth Guam Legislature regarding Public Law 24-255 (Aug, 14, 1998). Having reviewed the language of the statute changed by Public Law 24-255, the legislative process of Public Law 24-255, and the Governor's interpretation, the Court finds that it was the Legislature's intent to remove the statutory exception created by Public Law 21-135 and to require AIAA to procure all concession contracts through the "competitive bidding process".

### 3. Public Bill 26-51

The Legislature repealed and reenacted 12 GCA § 1203.1 in Public Law 26-51. The Legislature did so due to AIAA's need of a continuous revenue stream and a need to extend certain leases. Public Law 26-51:1 (Oct. 16, 2001). The Legislature also found that the "concept of a Master Food and Beverage Concessionaire ha[d] outlived its usefulness" and that "AIAA [w]as capable of overseeing individual concessionaires and [stood] to realize additional revenue from food and beverage concessions, *if* these contracts [were] opened up for public bid." Id. As a part of their repeal and reenactment efforts, the Legislature deleted Subsection(a)(iv) of § 1203.1(a) added by Public Law 24-255, and renumbered previously numbered Subsection(a)(v) as Subsection(a)(iv).

During the committee work for Bill 3(COR), the Committee on Tourism, Transportation and Economic Development ("TTED Committee") focused primarily on the usefulness of a master food and beverage concession agreement and chose to give AIAA more flexibility to oversee individual food and beverage concessionaires. The TTED Committee left intact the language requiring AIAA to use a "competitive bid process". After their committee work, the TTED Committee recommended Bill 3(COR) to be adopted by the full body of the Legislature. The Legislature passed Public Law 26-51 on October 15, 2001 after overriding Governor Gutierrez's veto. Having reviewed the Legislature's actions, the Court finds that the Legislature did not change its previous mandate to AIAA to procure concession agreements through a "competitive bid process".

### 4. Section 1203.1(a)(1) and Section 1203.1(a)(4) Can Be Read Together

The Court now looks to how Section 1203.1(a)(1) and 1203.1(a)(4) can be read together in light of § 1203.1's legislative history. As a general rule, a statute enacted at a later date may repeal an earlier one. Lujan v. Lujan, 2000 Guam 21, ¶ 11. However, when there is no express provision repealing the earlier law, the Court must examine the legislative history under another principle: "repeals by implication are not favored, ... [t]he intention of the legislature to repeal must be clear and manifest." Watt v. Alaska, 451 U.S. 259, 266-67 (1981); Lujan, 2000 Guam 21 at ¶ 11. When two statutes are enacted in the same legislative session, the presumption against implied repeal is even stronger. Pullen v. Mogenthou, 73 F.2d 281, 283 (2d Cir. 1934).

The earliest version of 12 GCA § 1203.1, Public Law 21-135, was passed in 1992. Six years later, the Legislature passed Public Law 24-255, which mandated a different method for procuring concessions contracts. After a review of the two public laws, although the Legislature did not specifically mention its intent, the Court finds that the Legislature intended to repeal the requirement that AIAA to procure exclusive concession agreements through a "competitive proposal process" in favor of a more general concession procurement policy of using a "competitive bidding process". Public Law 24-255 was the legislative act that removed the statutory exception of Public Law 21-135.

The Court's interpretation is supported by the reasons the Legislature chose to pass both laws. At first, the Legislature passed the mandates of § 1203.1(a) as a check against political interference into AIAA's operations. However, the Legislature held concerns of the competitiveness of local businesses bidding for concession contracts. So, the Legislature passed Public Law 24-255 as a way of making AIAA's concession procurement program more competitive and transparent. By switching from a "competitive proposal process" to a "competitive bid process", the Legislature hoped to bring more transparency after AIAA's Board exercised questionable business judgment by extending LSG's concession contract four years before it was to come due. After repealing and replacing the mandate to procure concession contracts through a "competitive proposal process", the Legislature retained the language for the new "competitive bid process" mandate when the body repealed and reenacted § 1203.1 in 2001.

Notwithstanding the Court's finding, the Court sees how §§ 1203.1(a)(1) and (4) could be read together without repealing the "competitive proposal procedure" mandate of Subsection(a)(1). By preserving a narrow exception for procurements of exclusive contracts to sell certain goods or provide certain products, the two statutes can be read harmoniously. However, the Court's examination of the legislative history of Public Law 24-255 shows how the Legislature wanted to create a more open and transparent system of procuring concession contracts. The notion of the Legislature requiring all concession procurements except procurements for lucrative, exclusive duty free concessionaire contracts to submit to the more transparent and open "competitive bid process" seems to be directly in contrast to the Legislature's intent. On the contrary, a lucrative, exclusive duty free concessionaire contract would be exactly the type of procurement the Legislature sought to make more open and transparent. Therefore, the Court finds that the Legislature currently intends for AIAA to procure all concession contracts through the "competitive bid process".

## 5. The Procurement Code Allows for the Competitive Bid Process

Having found that the § 1203.1(a) requires AIAA to procure concession contracts through a "competitive bid process", the Court ties the § 1203.1(a)(4) "competitive bid process" to the Procurement Code. Guam's Procurement Code allows for several methods of procurement selection and "expressly mandates the use of the competitive sealed bid process." Fleet Systems, 2006 Guam 6 ¶ 14. However, the Procurement Code allows for certain exceptions to the general rule. The exceptions are listed by statute: small purchases pursuant to 5 GCA § 5213; sole source procurement pursuant to 5 GCA § 5214; emergency procurement pursuant to 5 GCA § 5215; procurement of certain services specified in 5 GCA § 5121 pursuant to 5 GCA § 5216; and procurement from nonprofit corporations pursuant to 5 GCA § 5217. The Court disregards the exceptions of small purchases, sole source procurement, emergency procurement, and nonprofit corporation procurement, in its analysis as none of those exceptions apply. Also, the Court disregards the since-repealed statutory exception of 12 GCA § 1203.1(a)(1).

The Procurement Code allows for a "competitive bid process". In fact, 5 GCA § 5211 and 2 GAR § 3109, which outline the procedures for competitive sealed bidding, share the same language as 12 GCA § 1203.1(a)(4)'s "competitive bid process". Further, the Court finds no other specified method of source selection in the Procurement Code, which could track more closely to 12 GCA § 1203.1's requirement. Applying 5 GCA § 5211 to 12 GCA § 1203.1 allows the Court to harmonize the AIAA enabling statute's directive regarding the Procurement Code. Therefore, the Court finds that the Legislature directed AIAA to utilize the CSB process pursuant to 5 GCA § 5211 and 2 GAR § 3109, when procuring a duty free concessionaire.

### 6. AIAA Incorrectly Argues Its Compliance With the Procurement Code

At this juncture, the Court addresses AIAA's arguments against DFS's argument. To harmonize two conflicting sections of AIAA's enabling statute, the Court examined the legislative history of three public laws. The Court then harmonized AIAA's enabling statute with the Procurement Code and found that the Legislature directed AIAA to apply the CSB procedures pursuant to 5 GCA § 5211 and 2 GAR § 3109. However, AIAA argues in opposition to the Court's findings.

### a. Objections to Fleet Services

The most prominent argument against the Court's findings is that the Procurement Code does not require AIAA to use the CSB. AIAA argues that Fleet Systems does not apply to the current case for two reasons. Firstly, 5 GCA § 5211 "does not apply where, as here, a public contract *generates revenue* rather than requires the *expenditure* of public funds." AIAA Opp'n 17. Secondly, AIAA argues that because AIAA procured a professional service, Fleet Services and 5 GCA § 5210 do not apply. Id.

The Court rejects both arguments. Firstly, nothing in the language of § 5211 requires a CSB process to be used only in situations involving the expenditure of public funds. While the requirement that the government award the contract to "the lowest responsible bidder whose bid meets the requirements and criteria set forth in the Invitation for Bids...", makes sense for a traditional procurement, AIAA's disagreement is misplaced because the Court cannot apply the standards for a traditional procurement to a nontraditional one such as the 2012 Procurement. A

traditional procurement's purpose is to expend public money to obtain a good or service for the government. Section 5211's requirement would make sense in a traditional procurement because the government would be getting what it wants at the lowest price. A duty free concession procurement reverses the premise of § 5211. Because a duty free concession contract generates money rather than expending it, logically, the agency procuring a duty free concessionaire would want the responsible bidder who offers the highest revenue-generating bid. In that vein of thought, the Supreme Court's analysis in Fleet Services would certainly apply to the present case.

The Court also rejects AIAA's interpretation of professional services. AIAA argues that because "the operation of an international concession obviously constitutes 'professional services' at only a handful of companies in the world are qualified to perform", and because "the concessionaire has the sole responsibility to run the concession", AIAA sought professional services. AIAA Opp'n 17-18. The Fleet Services court utilized a two-part test to determine whether a service was professional: (1) whether the status of the service provider is one that generally gets paid for rendering such services; and (2) whether the service or act is professional in nature. Fleet Services, 2006 Guam 6 ¶ 25. The Court applies the two-part test.

Firstly, an airport duty free concessionaire normally pays for the right to operate their business on an airport property. Therefore, a duty free operator cannot be seen as professional under this first factor.

Secondly, the Court examines whether the status of an airport duty free operator is professional in nature. The Fleet Systems court defined professional services as "services [which] require the exercise of professional and significant business judgment in providing important services", Fleet Systems, 2006 Guam 6 ¶ 27 (citing Shively v. Belleville Township High School, 769 N.E.2d 1062, 1068 (Ill.App.Ct.2002)), but expanded the term "beyond traditional fields, and [] recognized that services may be professional even if they include some elements of a manual, non-professional nature." Id. at ¶ 30. To operate a successful business, an airport duty free operator would be required to perform numerous professional tasks. Such tasks include market research, marketing, product research, and management of stock and personnel.

Under this second factor, an airport duty free operator would perform a service professional in nature.

The Fleet Systems court instructs the Court to weigh both factors equally. Id. at ¶ 25. Although an airport duty free operator performs tasks professional in nature, an airport duty free operator does not receive money to operate their business within an airport. The first factor weighs against interpreting the 2012 Procurement as one for a professional service while the second weighs toward interpreting the 2012 Procurement as one for a professional service. However, weighing both factors equally, the Court cannot classify the procurement of an airport duty free operator as a procurement of a professional service. Therefore, under Fleet Systems, the method of procurement used in this case would not fall within the professional service exception of 5 GCA § 5121.

### b. Other Objections

The Court examines two further arguments brought by AIAA. Firstly, AIAA argues that, because DFS knew about and "helped devise the 'ad hoc RFP process' it now complains about", the Court should bar DFS's argument for bad faith reasons and estoppel principles. AIAA Opp'n 17. The Court looks at the evidence AIAA uses to support its argument. AIAA cites to two declarations from Airport Executive Manager Charles Ada filed with AIAA Motions for Summary Judgment ("MSJ") 1 and 3. In the Ada Declaration filed with MSJ 1, AIAA cites to a paragraph detailing AIAA's evaluation committee and the steps the evaluation committee took to reach their decision. Ada Decl. (MSJ 1) ¶ 8 (Apr. 13, 2017). AIAA made this citation to argue that the 2012 RFP Process was not "ad hoc". AIAA also cites to five paragraphs in the Ada Declaration filed with MSJ 3, which detail DFS's participation in previous RFPs with AIAA. Ada Decl. (MSJ 3) ¶¶ 4, 6-9. AIAA also relies on arguments made at the motion hearing, as well as excerpts from the deposition of Jim Beighley, filed as a declaration with AIAA's Opposition. Rapadas Decl. (DFS MSJ) Ex. 1 (Nov. 22, 2017).

Having reviewed the presented evidence, the Court rejects AIAA's estoppel arguments. AIAA uses Mr. Beighley's deposition testimony to show that DFS assisted AIAA in putting together the 2012 RFP requirements. The estoppel doctrine relies on the maxim that "no man

may take advantage of his own wrong." Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 232 (1959). Estoppel is a "concept by which one own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct." Lockett v. Planned Parenthood of Indiana, Inc., 42 N.E.3d 119, 135 (Ind. Ct. App. 2015) (citing Brown v. Branch, 758 N.E.2d 48, 51 (Ind. 2001)). Guam's Supreme Court defines equitable estoppel as "[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he would otherwise have had." Mobil Oil Guam v. Young Ha Lee, 2004 Guam 9 ¶ 24 (quoting Hekett v. Paulig, 72 N.E.2d 142, 145-46 (Ohio Ct. App. 1999)) (internal quotations omitted). The Mobil Oil court used a four-part test for equitable estoppel in their analysis:

> (1) the party to be estopped must be apprised of the facts;
> (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon;
> (3) the party asserting the estoppel must be ignorant of the true state of the facts; and
> (4) he must rely upon the conduct to his injury.

Id. The Mobil Oil court premised their analysis that the party to be estopped intentionally mislead the other party. Id. at ¶ 25.

Mr. Beighley's testimony shows conversations between airport officials and Mr. Beighley regarding the 2012 Procurement. While it is unclear if Mr. Beighley offered his opinions and ideas unsolicited, it does appear to the Court that Mr. Beighley held constructive discussions with AIAA officials. The Court rejects AIAA's estoppel arguments because AIAA fails to demonstrate the first two elements of the Mobil Oil court's analysis which require AIAA to show that DFS intentionally acted to mislead AIAA. On the contrary, the Court sees an honest dialogue between DFS and AIAA in Mr. Beighley's deposition testimony. The 2012 Procurement was to be AIAA's first major competitive duty free RFP, and Mr. Beighley shared knowledge borne from DFS's participation in other airport duty free RFPs from around the world. Therefore, the Court finds that AIAA's estoppel objection lacks merit.

The Court also rejects AIAA's argument that DFS's prior knowledge and actions should bar DFS's claims. In the Court's AIAA MSJ 3 D&O, rather than finding that DFS had

knowledge that AIAA conducted prior RFPs in violation of AIAA's enabling statute, the Court concluded that AIAA's assertion was actually a material question of fact. AIAA MSJ 3 D&O 10. The Court has trouble agreeing with AIAA that DFS undisputedly knew for twelve years that AIAA conducted RFPs in violation of the Procurement Code. Rather, the Court finds it more likely that AIAA's argument for prior knowledge also represents material question of fact. The Court simply does not have the information to make a factual finding. Therefore, the Court finds that AIAA's prior knowledge and actions objection has no merit.

Having addressed the merits of DFS's second argument and AIAA's objections, the Court finds that AIAA violated the Procurement Code and its enabling statute by administrating the 2012 Procurement improperly. With there being no disputes of material fact, the Court GRANTS summary judgment with regards to DFS's Argument 2 and Complaint for reasons independent of any other decision the Court may render in this decision and order. The Court will address remedies in a separate section at the end of this decision and order.

## F. AIAA Violated the Procurement Code by Not Maintaining a Complete Procurement Record, and by Failing to Properly Certify the Procurement Record

DFS argues that AIAA violated the Procurement Code by maintaining an incomplete procurement record, and by failing to properly certify the procurement record. The Procurement Code requires that "[a]ll procurement records shall be retained and disposed of in accordance with records retention guidelines and schedules approved by the Attorney General." 5 GCA § 5247. The Procurement Code also specifies the duties of procurement officers. Section 5249 states:

> Each procurement officer shall maintain a complete record of each procurement. The record shall include the following:
> (a) the date, time, subject matter and names of participants at any meeting including government employees that is in any way related to a particular procurement;
> (b) a log of all communications between government employees and any member of the public, potential bidder, vendor or manufacturer which is in any way related to the procurement;

(c) sound recordings of all pre-bid conferences; negotiations arising from a request for proposals and discussions with vendors concerning small purchase procurement;

(d) brochures and submittals of potential vendors, manufacturers or contractors, and all drafts, signed and dated by the draftsman, and other papers or materials used in the development of specifications; and

(e) the requesting agency's determination of need.

5 GCA § 5249. The Procurement Code also requires government agencies to certify their procurement records at certain times. Section 5250 requires that:

No procurement award shall be made unless the responsible procurement officer certifies in writing under penalty of perjury that he has maintained the record required by § 5249 of this Chapter and that it is complete and available for public inspection. The certificate is itself a part of the record.

5 GCA § 5250.

The Guam Administrative Rules and Regulations (GAR) also guide the Court. A corresponding GAR with the same language as 5 GCA §5427 exists at 2 GAR § 3127. Corresponding GARs for 5 GCA §§ 5429 and 5450 exist at 2 GAR §§ 3129 and 3130 respectively. Having established AIAA's duty, the Court examines DFS's two alleged procurement record-related violations.

## 1. AIAA Prepared an Incomplete Procurement Record

The first of DFS's arguments relates to records of meetings allegedly to have taken place between AIAA employees. DFS Mot. 9. According to DFS, there are undisputed facts showing that AIAA employees participated in meetings related to the 2012 Procurement. Id. The Court looks at the exhibits produced by DFS as evidence. In Exhibit 24 of the Civille Declaration, Jean Arriola asks Justin Powell and Mark Taylor of Leigh Fisher to have a teleconference with her and Frank Santos on March 22, 2013. Civille Decl. Ex. 24 (Oct. 27, 2017). Exhibit 25 is an email from Mark Taylor asking Jean Arriola if she wants the Leigh Fisher employees to call AIAA. Civille Decl. Ex. 25. Exhibits 34 and 35 are emails exchanged between AIAA figures regarding a scheduled meeting on February 14, 2013, regarding the 2012 Procurement. Civille Decl. Exs. 34, 35. Exhibit 36 is an email exchange between AIAA figures discussing a special meeting on April 4, 2013. Civille Decl. Ex. 36. The Court reviewed these five exhibits in a light most favorable to AIAA, and declines to make a factual finding that that the alleged meetings

actually happened. Although the circumstantial evidence is compelling, DFS provides no direct proof of these meetings taking place. Therefore, the Court rejects DFS's assertion of an incomplete procurement record based upon Exhibits 24, 25, 34, 35, and 36 of the Civille Declaration.

The Court turns its inquiry to the final exhibit provided by DFS. Exhibit 38 is a series of billing statements from AIAA's counsel, the law firm of Calvo Fisher & Jacob, LLP ("CFJ"), to AIAA. See generally Civille Decl. Ex. 38. The billing statements include the date of the invoiced activity, the attorney who participated in the invoiced activity, the description of the invoiced activity, the period of time spent by the attorney, and billable amount to AIAA. See generally id. Multiple entries from March 2013 billing statement caught the Court's attention. On March 19, 2013, CFJ billed $175.00 for Attorney JCD spending one hour to "[a]ttend meeting at Airport with evaluation committee members, Executive Manager, Attorney M. Pangelinan and Attorney S. Fabian to discuss [REDACTED]". Id. at GIAAPR 700790. CFJ also billed AIAA for Attorneys SLF and MAP's attendance at meetings with the evaluation committee on the same day. Id. On March 23, 2013, Attorney JCD spent 2.2 hours to "[a]ttend meeting at Airport with Evaluation Committee, Frank Taitano, Attorney M. Pangelinan, and Attorney S. Fabian. Id. at GIAAPR 700795. On March 25, 2013, Attorney JCD participated in a telephone call with Jean Arriola and Frank Taitano regarding specialty retail. Id. On March 26, 2013, Attorney JCD "[attended] [a] meeting with Attorney M. Pangelinan, Attorney S. Fabian, Executive Manager and Jean Arriola regarding status". Id. at GIAAPR 700796. The Court found other billing entries for similar meetings between AIAA and its counsel within the March billing statement all describing Specialty Retail activities.

The Procurement Code places an affirmative duty on AIAA to record "the date, time, subject matter and names of participants at any meeting including government employees that is in any way related to a particular procurement." 5 GCA § 5249(a). AIAA also had the affirmative duty to create "a log of all communications between government employees and any member of the public, potential bidder, vendor or manufacturer which is in any way related to

the procurement." 5 GCA § 5249(b). A procurement record missing a record of those meetings and telephone calls would be an incomplete procurement record.

The Court now considers Exhibit 38 in a light most favorable to AIAA. Generally, a law firm sends a client a billing statement or invoice for payment of services rendered. The Court cannot come to any conclusion that does not result in the Court finding that CFJ attorneys attended meetings with AIAA personnel regarding the 2012 Procurement as invoiced. The only explanation that leads to a different conclusion requires the Court to find that CFJ billed AIAA for services that CFJ attorney did not perform. Rather than finding that CFJ violated the Guam Rules of Professional Conduct, the Court adopts the reasonable conclusion and finds that CFJ billed AIAA for meetings and telephone calls that actually happened.

After reviewing the procurement record, the Court could not find any entry in the procurement record that lists the date, time, subject matter and the names of the participants of the meetings catalogued in Exhibit 38. The Court notes another missing item from the filed procurement record. The Procurement Code requires all negations to be recorded. 5 GCA § 5429(c). Sound recordings of the negotiations between Lotte and AIAA are absent from the procurement record. Therefore, the Court finds that AIAA failed its affirmative duty to maintain a complete procurement record and violated the Procurement Code pursuant to 5 GCA §§ 5245 and 5247.

The Court made a similar finding in its decision and order granting a cross-motion for summary judgment in Teleguam Holdings, LLC v. Government of Guam & Pacific Data Systems. See Teleguam Holdings, LLC v. Gov't of Guam & Pac. Data Sys., Civil Case No. 0334-13, *Decision and Order* (Aug. 18, 2016). The Court held that "[b]ecause the procurement record for IFB GSA 064-11 is incomplete, the solicitation and proposed award based on this record are in violation of the Procurement Law." Id. at 7. The Court must remain consistent with prior precedent, especially when confronted with the same violation of the Procurement Code. Accordingly, the Court GRANTS summary judgment with regards to DFS's Argument 3 and Complaint for reasons independent of any other decision the Court may render in this decision and order.

## 2. AIAA Failed to Certify the Procurement Record

The second of DFS's arguments raises a violation of AIAA's duty to certify the procurement record prior to any award being made. The Procurement Code required Mr. Ada to certify the procurement record before AIAA decided to award the duty free concession contract to Lotte. See 5 GCA § 5250. The Court will not review whether AIAA failed to certify the procurement record prior to the award to Lotte because the Court found that AIAA could make no award to Lotte pursuant to the First Protest's automatic stay. However, the Court will examine the snapshot in time when AIAA submitted the procurement record to the Court.

The Procurement Code does not specify the procedure of protest appeals so the Court looks to the GARs to fill in the gaps. A head of agency to "*shall submit* to the Public Auditor a *complete* copy of the procurement record relevant to the appeal within five (5) working days of receiving notice of an appeal...". 2 GAR § 120104. (emphasis added). The Court's inquiry focuses on AIAA's duty to file a complete copy of the procurement record.

Neither the Procurement Code or the GARs specify what constitutes a complete record suitable for use on appeal. The Court sees the closest definition to a complete record in 5 GCA § 5250. The statute requires an agency head to certify in writing that a procurement record is complete prior to a procurement award. The act of certification is a declaration from the agency head that everything in the procurement record supports the agency's decision and also that nothing is missing from the procurement record which might undermine the agency decision. Logically, the Court sees that the purpose of this certification is for transparency and the public's confidence that the agency conducted a fair procurement. The purpose of certification would make the act of certification a crucial aspect in the maintenance of a procurement record. Public policy supports an interpretation requiring certification of a procurement record to be complete. Whether a procurement record is used to justify a procurement award, or is to be scrutinized under administrative or judicial review, the public cannot be confident in a procurement award or review if the scrutinized record contains gaps or is missing content.

The Court also finds similar requirements in the Supreme Court's Rules of Appellate Procedure. The Rules of Appellate Procedure requires the Superior Court Clerk to file a

certificate of record with the Clerk of the Supreme Court. Sup. Ct. Guam R. App. P. 7.1(c). The Superior Court Clerk only certifies after all available transcripts, and papers are gathered and the Superior Court record is complete. The appellate rules further supports an interpretation that the Procurement Code requires agency head certification before being considered complete because the Superior Court sits as an appellate body to the OPA and the agency. Therefore, the Court finds that no procurement record can be truly complete without the agency head certifying it.

The OPA recused herself from this matter on February 12, 2015. Response to Writ of Mandate 3 (February 12, 2015). The Court stands as the body reviewing the 2012 Procurement as well as all three protests filed by DFS. Therefore, the Court finds that AIAA must file a certified, complete copy of the procurement record with the Court. AIAA filed the procurement record on two instances with the Court. AIAA first filed the procurement record on February 13, 2015. See AIAA's Procurement Record for the Appeal of the May 17, 2013 Denial of DFS First Procurement Protest Filed by DFS on May 3-, 2013 (Feb. 13, 2015). AIAA supplemented its first filing with a second filing on March 17, 2017. See AIAA Procurement Record (Mar. 17, 2017). AIAA's second filing held the relevant portions of the procurement record for all three protests. Absent within the procurement record itself, or as a declaration attached to the procurement record, is Mr. Ada's certification. A procurement record without the agency head's certificate is an incomplete procurement record.

AIAA provides no facts to refute DFS's proffer of evidence. AIAA only argues that a lack of certification is a minor technical defect that had been remedied by the "unprecedented and virtually limitless amount of discovery". AIAA Opp'n 19. The Court rejects AIAA's argument as Guam's procurement laws and regulations make the certification and filing of a procurement record an affirmative duty for AIAA. AIAA failed that affirmative duty. Therefore, with there being no disputes of material fact, the Court finds that AIAA filed an incomplete copy of the procurement record in violation of 2 GAR § 120104 and Guam's procurement laws. Accordingly, the Court GRANTS summary judgment with regards to DFS's Argument 3 and Complaint for reasons independent of any other decision the Court may render in this decision

and order. The Court will address remedies in a separate section at the end of this decision and order.

## G. AIAA Violated the Procurement Code's Mandate of Fair and Equitable Treatment to All Persons Dealing With the Procurement System

DFS moves for summary judgment on its Seventh Cause of Action arguing that Guam's Procurement Code mandates fair and equitable treatment to all persons dealing with the procurement system. The Guam Legislature enacted the Procurement Code "to ensure the fair and equitable treatment of all persons who deal with the procurement system of this Territory." 5 GCA § 5001(a)(4). As a participant, DFS had a legally protected interest to participate in a fair and equitable procurement guided by a legislatively approved process.

DFS alleged in its Third Protest Letter that "[t]he process undertaken by [A]IAA in connection with the solicitation and purported award of RFP violated 12 GCA § 1203.1, and was therefore an unauthorized exercise of agency power and is invalid *ab initio*." Weiss Decl. (MSJ 3) Ex. 13. DFS's Complaint also alleges that "DFS and other proposers, other than Lotte, were deprived of their right to a full and fair consideration of their respective proposals..." DFS Compl. (CV0198-15) ¶ 55.

The Court agrees. The Court has already found multiple violations of the Procurement Code above. The Court finds that AIAA deprived DFS and, by extension, all other unsuccessful proposers their right to a full and fair consideration of their proposals by not adopting legislatively mandated criteria, by not using the correct method of source selection, and by maintaining an incomplete procurement record. Therefore, the Court GRANTS summary judgment with regards to DFS's Argument 4 and DFS's Seventh Cause of Action. The Court will address remedies in a separate section at the end of this decision and order.

## H. Remedies

The Court now addresses the remedies and DFS's prayers for relief. In this decision and order, the Court found that AIAA committed multiple violations of law with regards to the 2012 Procurement. The Court also found that the matter currently sits in the pre-award stage because AIAA exceeded its statutory authority by granting Lotte the rights to operate the airport duty

free concessionaire. In the pre-award stage, 5 GCA § 5451 requires a solicitation or proposed award of a contract found in violation of the law to be (1) cancelled; or (2) revised to comply with the law. 5 GCA § 5451. Currently, Lotte operates the duty free concessionaire and is in the final year of Lotte holding exclusive rights to sell products listed in Attachment B-1 of the Specialty Retail Concession Agreement between AIAA and Lotte. Because AIAA exceeded its authority and improperly executed a concession agreement with Lotte, the Court sees no way of revising the Specialty Retail Concession Agreement to comply with the Procurement Code as well as AIAA's enabling statute.

The Supreme Court instructs the Court that a procurement held in violation of Guam's Procurement Code must be invalidated and any proposed awards set aside. Fleet Systems, 2006 Guam 6 ¶ 35. Therefore, the Court heeds the Supreme Court's instructions and hereby VOIDS AIAA Request for Proposals No. GIAA 010-FY12. The Court VOIDS and SETS ASIDE the Specialty Retail Concession Agreement between AIAA and Lotte. If AIAA wishes to issue another procurement for a duty free concession operator, the Court ORDERS that AIAA do so in complete compliance with the Procurement Code and AIAA's enabling statute. With respect to Lotte's operations at the airport, the Court recognizes the difficulties AIAA and the Territory of Guam will face if the Court orders Lotte to vacate the retail space. Therefore, the Court finds that the public interest will be best served if Lotte remains as the duty free concession operator until AIAA procures a new duty free concession operator. Accordingly, the Court ORDERS AIAA to abide by the terms of the current Specialty Retail Concession Agreement until AIAA procures an operator.

## CONCLUSION

For the reasons set forth above, the Court finds that AIAA violated its enabling statute when AIAA failed to finalize, adopt, and promulgate a set of non-airline concession and lease criteria pursuant to 12 GCA § 1203.1(a)(2). The Court further finds that AIAA acted in violation of 12 GCA § 1203.1 when the agency proceeded with the 2012 Procurement. With there being no disputes of material fact, the Court GRANTS summary judgment on DFS's

Argument 1 and its Third to Seventh Causes of Action pled in its Complaint for reasons independent of any other decision the Court may render in this decision and order.

For the reasons set forth above, the Court finds that AIAA violated the Procurement Code and its enabling statute by administrating the 2012 Procurement improperly. Accordingly, the Court GRANTS summary judgment with regards to DFS's Argument 2 and Complaint for reasons independent of any other decision the Court may render in this decision and order.

For the reasons set forth above, the Court finds that AIAA failed its affirmative duty to maintain a complete procurement record and violated the Procurement Code pursuant to 5 GCA §§ 5245 and 5247. Accordingly, the Court GRANTS summary judgment with regards to DFS's Argument 3 and Complaint for reasons independent of any other decision the Court may render in this decision and order.

For the reasons set forth above, the Court finds that AIAA filed an incomplete copy of the procurement record in violation of 2 GAR § 120104 and Guam's procurement laws. Accordingly, the Court GRANTS summary judgment with regards to DFS's Argument 3 and Complaint for reasons independent of any other decision the Court may render in this decision and order.

For the reasons set forth above, the Court finds that AIAA violated the automatic stay provision of 5 GCA § 5425(g). The Court further finds that AIAA exceeded its statutorily allotted authority. Therefore, the Court GRANTS DFS's Argument 5 and the First and Second Causes of Action in its Complaint and DECLARES that AIAA violated 5 GCA § 5425(g).

For the reasons set forth above, the Court finds that AIAA deprived DFS and, by extension, all other unsuccessful proposers their right to a full and fair consideration of their proposals by not adopting legislatively mandated criteria, by not using the correct method of source selection, and by maintaining an incomplete procurement code. Therefore, the Court GRANTS summary judgment with regards to DFS's Argument 4 and DFS's Seventh Cause of Action.

For the reasons set forth above, the Court hereby VOIDS AIAA Request for Proposals No. GIAA 010-FY12. The Court VOIDS and SETS ASIDE the Specialty Retail Concession

Agreement between AIAA and Lotte. If AIAA wishes to issue another procurement for a duty free concession operator, the Court ORDERS that AIAA do so in complete compliance with the Procurement Code and AIAA's enabling statute. With respect to Lotte's operations at the airport, the Court recognizes the difficulties AIAA and the Territory of Guam will face if the Court orders Lotte to vacate the retail space. Therefore, the Court finds that the public interest will be best served if Lotte remains as the duty free concession operator until AIAA procures a new duty free concession operator. Accordingly, the Court ORDERS AIAA to by abide the terms of the current Specialty Retail Concession Agreement until AIAA procures an operator.

FEB 0 2 2018

**IT IS SO ORDERED** this _____.

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of:
Civille Tang
c/o Cabot
Date: 2/2/18 Time: 3:30 pm
Jerimie K.C. James
Deputy Clerk, Superior Court of Guam